**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Howard Cochran, | No. CV 11-1365-PHX-RCB (BSB) |
| Plaintiff, | |
| vs. | **O R D E R** |
| Sudha Rao, | |
| Defendant. | |

Plaintiff Howard Cochran, an inmate confined by the Arizona Department of Corrections (ADC), filed this *pro se* civil rights action regarding medical care he received while in custody at the Maricopa County Sheriff's Office (MCSO). (Doc. 9.) Defendant Dr. Sudha Rao moves for summary judgment,[1] and Plaintiff cross-moves. (Docs. 42, 44.)

The Court will grant the Defendant's motion, deny Plaintiff's motion, and terminate the action.

**I.     Background and Summary of Motion**

In his Amended Complaint, Plaintiff alleges that his constitutional rights were violated by Defendant, who works for Maricopa County Correctional Health Services (CHS). (Doc. 9.) Plaintiff alleges that on March 10, 2011, Defendant refused Plaintiff's request to be seen

---

[1] Pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), the Court notified Plaintiff of his obligation to respond to the motion for summary judgment. (Doc. 45.)

by a hand specialist. Plaintiff alleges that Defendant saw in x-rays that a pin was protruding through Plaintiff's skin. Plaintiff asked Defendant for pain medication and assignment to a lower bunk, but Defendant told Plaintiff not to "push it" about medication. Plaintiff alleges that he suffered increasing pain and that the pin is pinching nerves in his hand causing his hand to go numb. (Id.)

Defendant argues that she is entitled to summary judgment because (1) Plaintiff failed to exhaust administrative remedies: he abandoned the claim of failure to refer him to a hand specialist and his grievance did not raise the issue of failure to provide pain medication; and (2) she was not deliberately indifferent to a serious medical need. (Doc. 42.) Plaintiff asserts that he is entitled to summary judgment because (1) although he told defense counsel that he was not pursuing the alleged failure to refer him to a hand specialist, he now wants to pursue that claim, and (2) Defendant was deliberately indifferent. (Doc. 44.)

In support of her motion, Defendant submits her Statement of Facts (Doc. 43 (DSOF)); medical records and reports (Doc. 42, Exs. 1, 7, 9-13, 15), Health Needs Requests (HNR) (id., Exs. 8, 11); excerpts from Plaintiff's deposition (id., Ex. 20); the affidavit of Sergeant Hernandez and grievance documents (id., Ex. 21); and other documents. Plaintiff submits his motion (Doc. 44) and exhibits.

## II.     Motions

### A.     Parties' Contentions

#### 1.     Defendant

Plaintiff was shot in the abdomen and right hand on September 11, 2008, and went to St. Joseph Hospital and Medical Center in Phoenix where Dr. Champagne, a hand surgeon, operated to remove bone fragments and dead muscle tissue from Plaintiff's right hand and then stabilized the fractured bones with wires. (Doc. 43, DSOF ¶¶ 1, 2.) Two days later, Dr. Champagne performed another surgery to stabilize the fracture sites with surgical screws and plates. (Id. ¶ 3.)

After his release from the hospital, Plaintiff was incarcerated in the MCSO Jail; he was in custody from October 17, 2008 until December 1, 2008. (Id. ¶ 4.) Plaintiff was

1  released to the Arizona Department of Corrections on December 1, 2008 where he remained
2  until September 22, 2010. (Id. ¶ 5.) He was re-arrested soon thereafter and returned to the
3  Maricopa County Jail where he was incarcerated again from December 29, 2010 until April
4  11, 2012. (Id. ¶ 6.) Plaintiff's lawsuit is based upon the medical care he received in jail
5  during the period from 2010 through 2012.²

6  Plaintiff received an intake medical screening when he was booked into the Maricopa
7  County Jail in December, 2010, at which time he denied taking any prescription medications
8  or having any muscle, joint or bone problems or any other medical conditions. (Id. ¶¶ 9-11)
9  At a routine physical examination on January 12, 2011, Plaintiff mentioned recent numbness
10 and achiness in his hand and that he was concerned that the hardware in his hand had moved.
11 (Id. ¶ 12.) An x-ray of Plaintiff"s right hand was ordered; it was read by Dr. Zandra Nocera
12 of Arcadia radiology who reported: "Views of the right hand demonstrate a shattered healing
13 fracture of the fifth metacarpal which is affixed by a side plate and screws. Similarly noted
14 is a healing fracture involving the fourth metacarpal affixed by two side plates and screws.
15 Bullet fragments overlie the soft tissues of the fifth metacarpal. Degenerative changes are
16 seen within prominent bony spurring noted at the fifth proximal and distal interphalangeal
17 joints. There is no evidence of acute fracture or dislocation. Impression: Status post ORIF,
18 healing fractures of the fourth and fifth metacarpals." (Id. ¶ 13.)

19 On February 16, 2011, Plaintiff submitted an HNR asking about the results of his hand
20 x-ray; he was seen by a CHS nurse the next day and complained of bumps on his hand that
21 had started after his 2008 hand surgery. (Id. ¶¶ 14, 15.) His January 2011 x-ray was
22 reviewed, and Plaintiff was informed on February 18, 2011 that there was no change in his
23 hand based upon comparison of the current x-ray and his x-ray from his prior incarceration.
24 (Id. ¶ 16).

25 On February 18, 2011, Plaintiff requested that CHS get records from Dr. Champagne
26 to compare with his current x-rays. (Id. ¶ 17.) Defendant reviewed the medical records and

27
28  ²It is unclear whether Plaintiff was a convicted inmate or a pre-trial detainee at the at the time in question.

- 3 -

1  x-rays received from Dr. Champagne, and she examined Plaintiff on March 10, 2011. (Id.
2  ¶ 18.) Plaintiff reported feeling that the screws in his hand were coming loose and bony things
3  were poking out of the skin which was causing him pain. (Id.) Defendant determined that
4  the hardware in Plaintiff's right hand was stable and none of the pins were protruding
5  through the skin of his hand, and she showed Plaintiff his x-rays, which they discussed. (Id.
6  ¶¶ 19, 20.) Her recommendation was to observe at this time and have Plaintiff return if his
7  condition worsened. (Id. ¶ 21.)

8  Defendant asserts that it is her custom and practice to always document when a patient
9  requests pain medications and there is no indication in her progress note from March 10,
10 2011 that Plaintiff requested pain medications. (Id. ¶¶ 22, 23.) Defendant further asserts that
11 non-prescription pain medications were available even if Plaintiff did not request medication
12 from her because CHS nursing protocols allowed nurses to administer a one-week supply of
13 Tylenol or Ibuprofen for pain relief without first obtaining a provider's order. (Id. ¶ 24.)
14 CHS records show that Plaintiff never requested Tylenol, Ibuprofen, or other analgesics from
15 CHS. (Id. ¶ 25.) When he was seen by the physician's assistant or by a nurse, he did not
16 request pain medications. (Id. ¶ 26.) Defendant has now reviewed Plaintiff's
17 canteen/commissary purchase list and noted that he did not purchase any Tylenol or
18 Ibuprofen from the jail canteen during his MCSO incarceration. (Id. ¶ 27.)

19 On March 11 and 13, 2011 Plaintiff submitted HNR forms to CHS asking to be seen
20 by a hand specialist. (Id. ¶ 28.) Based upon her examination of Plaintiff and her review of
21 Plaintiff's medical records and x-rays, Defendant determined that there was no need for a
22 hand specialist; the hand fracture and the internal fixation were stable and there was no
23 medically necessary reason for specialty care at that time. (Id. ¶ 29.)

24 Defendant further asserts that Plaintiff's ADC records from his term of imprisonment
25 that immediately preceded his December 2010 to April 2012 incarceration in Maricopa
26 County show that he was seen by a nurse practitioner on September 15, 2010, complaining
27 of hand pain and was given Ibuprofen. (Id. ¶ 31.) On September 17, 2010, he was seen and
28 was given Naprosyn [an anti-inflammatory] and was to see the provider in one month. (Id.

- 4 -

¶ 32.) The ADC records did not show that Plaintiff had ongoing complaints of hand pain, and there is no recommendation in the ADC records received by Defendant suggesting that Plaintiff should undergo surgical removal of the hardware. (Id. ¶¶ 33, 34.)

On April 11, 2012, after his confinement in the Maricopa County Jail, Plaintiff returned to ADC, where an x-ray on June 15, 2012 revealed what Defendant reported: that the hardware was still in place. (Id. ¶ 36.) At the time of his deposition in September, 2012, Plaintiff testified that he understood that the x-rays from Dr. Champagne, and the x-rays from jail and the x-rays from ADC taken in June, 2012 all show that the hardware is in place in his hand and the pins are not backing out. (Id. ¶ 37.) In addition, during his recent deposition, Plaintiff acknowledged that, other than the June 15, 2012 x-ray of his hand, he has not seen a physician for his hand or received any care or treatment.

## 2. Plaintiff's Cross Motion and Response

Plaintiff submits a two and one half page motion for summary judgment with no Statement of Facts. (Doc. 44.) He states that he wants to proceed with the issue regarding the pins in his hand. (Id. at 1-2.) As to the pain, Plaintiff asserts that he always stressed the pain to every provider that he has ever seen and asked to be put on pain medications. (Id. at 2.) Plaintiff asked Defendant about the pain and asked for a bottom bunk pass. Defendant gave Plaintiff the bottom bunk pass but told Plaintiff not to push it about the pain medications and that the source of his pain was the bullet fragments. He argues that he had to have told Defendant about the pain if she gave him the bottom bunk pass. (Id.) She knew about the pain so she was deliberately indifferent. (Id. at 3.) Plaintiff submits an undated medical record from ADC showing he was given Naprosyn and an ADC record dated September 2010 showing he complained about pain and was given IBU. (Id., Ex. A.) He also submits an unidentified document that appears to be a narrative of medical appointments stating that the author met with Plaintiff on March 10, 2011 and he reported that the bony things in his hand are poking out of the skin and causing him some pain. (Id., Ex. B.)

Plaintiff also submits a brief response with numbered paragraphs. (Doc. 60.) He asserts that when he asked Defendant for pain medication, she refused. (Id. ¶¶ 1,2.) Plaintiff

- 5 -

1  asserts that he never returned to Defendant for pain medication because Defendant had
2  refused him treatment so there was no reason to return. (Id. ¶ 5.) He did not purchase
3  Tylenol at the jail because he was indigent. (Id. ¶ 6.) He alleges that he exhausted his
4  administrative remedies. (Id. ¶ 7.) Plaintiff argues that he does not need an expert witness
5  because the medical conduct required by the circumstances is within the knowledge of
6  laymen. (Id. ¶ 8.) Defendant was deliberately indifferent when she refused to send Plaintiff
7  to a hand specialist or a pain specialist even though she knew the pin was causing pain and
8  she refused Plaintiff pain medications. (Id. ¶¶ 11-13.)

### 3. Defendant's Response and Reply

Defendant argues that Plaintiff's response fails to comply with Local Rule of Civil Procedure 56.1(b), which requires a separate controverting statement of facts. (Doc. 58 at 2, Doc. 61 at 3.) She also asserts that Plaintiff's response does not set out specific facts by way of declaration, deposition, answers to interrogatories or authenticated documents to contradict he evidence. (Doc. 61 at 2.) She concludes that Plaintiff has not raised a genuine issue of material fact. Defendant asks that Plaintiff's response be stricken. (Id. at 4.)

### B. Legal Standards

### 1. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

1  the non-moving party. <u>Id.</u> at 250; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>,
2  475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact
3  conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require
4  a jury or judge to resolve the parties' differing versions of the truth at trial." <u>First Nat'l Bank
5  of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968).

6        When considering a summary judgment motion, the court examines the pleadings,
7  depositions, answers to interrogatories, and admissions on file, together with the affidavits
8  or declarations, if any. <u>See</u> Fed. R. Civ. P. 56(c). At summary judgment, the judge's
9  function is not to weigh the evidence and determine the truth but to determine whether there
10 is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. The evidence of the non-movant is
11 "to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> at 255. But,
12 if the evidence of the non-moving party is merely colorable or is not significantly probative,
13 summary judgment may be granted. <u>Id.</u> at 248-49. Conclusory allegations, unsupported by
14 factual material, are insufficient to defeat a motion for summary judgment. <u>Taylor v. List</u>,
15 880 F.2d 1040, 1045 (9th Cir. 1989). <u>See Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978,
16 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers
17 is insufficient to raise genuine issues of fact and defeat summary judgment").

18             **2.**     **Medical Claim**

19       A pretrial detainee is protected by the Fourteenth Amendment's Due Process Clause,
20 which establishes that "detainees have a right against jail conditions or restrictions that
21 'amount to punishment.'" <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1205 (9th Cir. 2008).
22 Although a pretrial detainee's right to receive adequate medical care derives from the Due
23 Process Clause of the Fourteenth Amendment, <u>Gibson v. County of Washoe</u>, 290 F.3d 1175,
24 1187 (9th Cir. 2002) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979)), it is difficult to apply
25 the "punishment" standard to medical care claims in the same manner it is applied to
26 conditions-of-confinement claims. <u>See Pierce</u>, 526 F.3d at 1206-1213. Under the Due
27 Process Clause, however, a detainee is protected against conditions or conduct—including
28 conduct related to medical treatment—that is arbitrary or purposeless. <u>See id.</u> at 1205(citing

1 Bell, 441 U.S. at 539).

2 At a minimum, the Due Process Clause imposes the same duty to provide adequate 3 medical care to those incarcerated as imposed by the Eighth Amendment. Gibson, 290 F.3d 4 at 1187. Therefore, the Eighth Amendment standards governing medical care may be 5 applied. See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Jones v. Johnson, 781 6 F.2d 769, 771 (9th Cir. 1986) ("the eighth amendment guarantees provide a minimum 7 standard of care for determining [the plaintiff's] rights as a pretrial detainee, including his 8 right to medical care").

9 To prevail on a claim under the Eighth Amendment for prison medical care, a prisoner 10 must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 11 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff 12 must show (1) a "serious medical need" by demonstrating that failure to treat the condition 13 could result in further significant injury or the unnecessary and wanton infliction of pain and 14 (2) the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (citations 15 omitted). To act with deliberate indifference, a prison official must both know of and 16 disregard an excessive risk to inmate health; the official must both be aware of facts from 17 which the inference could be drawn that a substantial risk of serious harm exists, and he must 18 also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate 19 indifference in the medical context may be shown by a purposeful act or failure to respond 20 to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 21 F.3d at 1096.

22 But mere claims of "indifference," "negligence," or "medical malpractice" do not 23 support a claim under § 1983. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 24 1980). Inadequate treatment due to malpractice or even gross negligence does not constitute 25 an Eighth Amendment violation. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 26 1990). Moreover, differences in judgment between an inmate and prison medical personnel 27 regarding an appropriate medical diagnosis or treatment are not enough to establish a 28 deliberate-indifference claim. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). In

1 such a case, the inmate must show that the course of treatment the doctors chose was
2 medically unacceptable under the circumstances. Id.

3     **C.**    **Analysis**

4     The Court will deny summary judgment to Plaintiff and grant summary judgment to
5 Defendant. Defendant submits evidence that she saw Plaintiff and evaluated his complaint
6 regarding his hand, reviewed old and new x-rays, and determined that no hand specialist was
7 needed. As to the pain, it appears that Plaintiff saw Defendant only once and admits that he
8 did not return. Although Plaintiff disputes that the care was adequate, he presents no
9 evidence that the care was medically unacceptable under the circumstances. Therefore,
10 Plaintiff fails to establish Defendant's deliberate indifference or to create a triable issue of
11 fact as to Defendant's liability.

12     As a preliminary matter, the Court denies Defendant's request to strike Plaintiff's
13 response to her motion for summary judgment. The Ninth Circuit has held that courts should
14 construe liberally motion papers and pleadings filed by pro se inmates and should avoid
15 applying summary judgment rules strictly. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir.
16 2010); see also Frost v. Symington, 197 F.3d 348, 352 (9th Cir.1999). In addition, the Court
17 will not address Defendant's exhaustion argument because it is premised on Plaintiff's
18 abandonment of the claim for a hand specialist. (Doc. 42 at 7.) Plaintiff reasserts that claim
19 in his motion and response, and Defendant does not address this post-deposition
20 development.

21     Turning to the issues for summary judgment, Plaintiff suggests that the care was
22 inadequate, but he provides no evidence that the care was medically unacceptable under the
23 circumstances. See Jackson, 90 F.3d at 332. The Court disagrees that the matter of referral
24 to a hand specialist is within the common knowledge of a layman. Defendant asserts that
25 multiple x-rays showed no problem with the pins or screws, and Plaintiff does not dispute
26 that. It was incumbent upon Plaintiff to provide an affidavit or deposition of an expert to
27 establish that the care was medically unacceptable. See Hutchinson v. United States, 838
28 F.2d 390, 393 (9th Cir. 1988) (granting summary judgment against a plaintiff who relied only

1 on her own allegations and conclusory statements that defendants had been negligent and who failed to provide affidavits or depositions of experts).

Plaintiff also complains that he did not receive pain medications. Assuming that Plaintiff told Defendant on March 10, 2011, that he was experiencing pain, the record shows that when Defendant saw Plaintiff, she had reviewed the x-rays, determined that they showed that the hardware was stable, and noted nothing protruding from the hand. In other words, there was no objective basis for the pain. Moreover, Defendant told Plaintiff to return if his condition worsened. Defendant submits evidence that Plaintiff could have requested Tylenol or Ibuprofen from the nurses but he did not; Plaintiff does not dispute this. He claims that he never went back to Defendant because she had on a single occasion denied him pain medication. This is insufficient to demonstrate that Defendant was deliberately indifference to a serious medical need for any period of time. The Court finds no triable issue of fact supporting a constitutional violation under either the Eighth or Fourteenth Amendment.

The Court will deny summary judgment to Plaintiff, grant summary judgment to Defendant, and terminate the action.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 42) and Plaintiff's Motion for Summary Judgment (Doc. 44).

(2) Plaintiff's Motion for Summary Judgment (Doc. 44) is **denied**.

(3) Defendant's Motion for Summary Judgment (Doc. 42) is **granted.**

(4) The action is terminated, and the Clerk of Court must enter judgment accordingly.

DATED this 26th day of March, 2013.

Robert C. Broomfield
Senior United States District Judge

- 10 -